MATTER OF WANG

In Section 245 Proceedings

A–20549207

A–20549209

*Decided by Regional Commissioner June 23, 1975*

Applications for adjustment of status under section 245 of the Immigration and Nationality Act, as amended, as nonpreference immigrants, by a 36-year-old mother (claiming she does not intend to enter the labor market in the United States) and her 12-year-old child, who are dependent for support upon the husband/father, a resident of Hong Kong where he is employed, are denied, in the exercise of discretion, on the ground that the adult alien's application is an attempt to circumvent the labor certification requirement of section 212(a)(14) of the Act. Since there is no evidence of record which would indicate that the marriage between the husband and wife is other than a viable one, it is inconceivable that they do not desire or intend to reside together. Hence, following adjustment of status of the adult applicant without requiring a labor certification, she would be in a position to accomplish the admission of her prospective-employee husband as a second preference relative, also without being required to obtain a labor certification. This would be contrary to the intent of the labor certification requirement of the statute.

ON BEHALF OF APPLICANTS: Wellington Y. Kwan, Esquire
1200 Wilshire Boulevard, Suite 300
Los Angeles, California 90017

These cases are before the Regional Commissioner on certification from the decision of the district director, Los Angeles, who denied the applications as a matter of discretion.

The applicants are a mother and child. The adult applicant is a 36-year-old female native of China and resident of Hong Kong. The other applicant, her only child, is a 12-year-old female native of Hong Kong and citizen of Great Britian. They last entered the United States as nonimmigrant visitors in August 1972. The record indicates that at least the adult applicant had been in the United States previously and had rented an apartment and opened a bank account. The husband and father, who has executed an affidavit of support in behalf of the applicants, presently resides in Hong Kong where he is employed as an accountant.

The adult applicant has had two years of nurse training and was last

employed in 1969 as a medical assistant at a Hong Kong hospital. The instant applications for status as permanent residents were filed in June 1974, seeking the applicants' adjustment of status as nonpreference immigrants. The adult applicant claims, in an affidavit executed in support of her application, that she does not intend to enter the labor market in the United States as she has $25,000 on deposit in banks in the United States providing about $100 a month income and is receiving $600 per month from her husband for herself and her daughter's support. The affidavit of support, executed by the husband, indicates he is currently employed in two jobs in Hong Kong with a combined salary of approximately $8,100 per year. He also lists financial holdings in real estate, stocks and bonds, and bank accounts of approximately $65,000 with about $3,300 annual income from dividends and rent.

In his denial, the district director found it to be unreasonable to assume that the family would remain separated; therefore, he concluded that the husband would also be seeking immigrant status as a second preference relative once his wife had obtained lawful permanent resident status. The district director also reasoned that the family's financial holdings were not adequate enough to support the family without either or both of the adult members being employed. The district director, in denying the applications as a matter of discretion, concluded that it would be inappropriate to favorably consider the wife's application, since by granting it, the husband could accomplish his admission into the United States as a relative of a lawful permanent resident without being required to obtain a labor certification under the provisions of Section 212(a)(14) of the Act. This would be contrary to the intent of that statute which is to protect American workers' employment opportunities.

Counsel in the appeal, in essence, contends that the applicants have ample funds available for their support without the adult alien seeking employment; and that she is, therefore, eligible for adjustment of status to that of a permanent resident alien without obtaining an alien employment certification. He also contends the district director's assumption that the husband will seek permanent resident status is ". . . unsupported by any documentation or any other reason. . . ."

Briefly, Section 245 of the Act states ". . . The status of an alien, other than an alien crewman, who has been inspected and admitted or paroled into the United States may be adjusted by the Attorney General, <u>in his discretion</u> and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent resident. . . ." (underscoring supplied)

Section 212(a) of the Act lists the classes of aliens who shall be ineligible to receive visas and shall be excluded from admission into the United States. Paragraph 212(a)(14) provides that among those classes are, ". . . aliens seeking to enter the United States for the purpose of

performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified . . . that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and work conditions of the workers in the United States similarly employed." The paragraph goes on to state that these exclusion provisions shall apply to nonpreference immigrant aliens.

Section 212(a)(14) was incorporated in the Act as a measure designed to protect the livelihood of workers lawfully present within the United States. It was intended to prevent an influx of aliens entering the United States for the purpose of performing skilled or unskilled labor where the economy of individual localities is not capable of absorbing them at the time they desire to enter the country. In reading the legislative History of Public Law 89–236 (65 Congr. and Admn. News, page 3333) which, when enacted on October 3, 1965, amended Section 212(a)(14) to its present wording, it becomes clear that to safeguard existing employment opportunities, it was the Congressional intent to assure that an entering alien would not be an individual who would be likely to replace an existing American worker or fill a function readily available to American aspirants.

If the applicant in this case were a person who had established she was independently in possession of a substantial amount of funds which would assure her and her family's support without having to enter the labor market, we could find no conflict with the Congressional intent expressed above. However, that is not the situation here. The applicants are dependent upon the husband and father. There is no evidence in the record which would indicate that the marriage between the husband and wife is other than a viable one and being such, it is inconceivable that they do not desire or intend to reside together. It follows then, that if the wife is granted status as a permanent resident, the husband will seek to rejoin his family in this country.

It is a clear fact of law and regulation that if *both* the applicant and her husband were applicants for immigrant visas at a consular office abroad or for adjustment of status under Section 245 of the Act while in the United States, a labor certification would be required from the husband or alternatively, both would be required to establish that their entry was *not* for the purpose of performing skilled or unskilled labor. It, therefore, appears to be most inappropriate to 'favorably consider an application such as we have from the adult applicant. The adjustment of the adult applicant without requiring a labor certification after which she would be in a position to accomplish the admission of her to-be-employed husband as a second preference relative, also without a labor

certification, is seen by us to be a transparent attempt to circumvent the protection which Congress sought to confer on American workers through the labor certification requirement of Section 212(a)(14) of the Act.

It is our conclusion that the applications should be denied in the exercise of the Attorney General's discretion on the ground that the adult alien's application is clearly an attempt to circumvent the intent of Section 212(a)(14) of the Act. The district director properly denied the applications and his decision will be affirmed.

ORDER: *It is ordered* that the decision of the district director be affirmed.